FILED
2021 Mar-08  PM 03:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| ONOFRIO ANTHONY MANGIONE, ) | |
| ) | |
| ) | |
| PLAINTIFF, ) | CIVIL ACTION NO. |
| ) | |
| v. ) | _____ |
| ) | |
| LINCOLN NATIONAL LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| DEFENDANT. ) | |

## COMPLAINT

Plaintiff Onofrio Anthony Mangione ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by Lincoln National Life Insurance Company ("Lincoln") in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Buffalo Rock Company ("Buffalo Rock"). In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to himself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys:

## INTRODUCTORY STATEMENT

1.     This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA").  This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure disability benefits due to Plaintiff through the group insurance policy sponsored by Buffalo Rock Company.

2.     The Plaintiff seeks all benefits to which he may be entitled should this Court determine he is "disabled," including long-term disability benefits under policies issued or administered and underwritten by Lincoln.

3.     Plaintiff seeks such benefits together with any other disability-related benefits his plan may provide based on the conditions documented in his medical records.

## JURISDICTION

4.     Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

5.      Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

6.      Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

## PARTIES

7.      Plaintiff Onofrio Anthony Mangione is a participant in the Plan and thus entitled to benefits available thereunder.

8.      Defendant Lincoln is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

9.      Lincoln is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21) as it related to the time when Plaintiff's disability arose.

10.      One of Lincoln's designated agent for service of process is:

Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

11.      Lincoln is an entity exercising authority or control respecting the management or disposition of Plan assets or the personnel exercising said authority over Plan assets.

12.      Lincoln is an entity providing services to the Plan at issue.

3

13.     Lincoln is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

14.     Buffalo Rock's LTD plan is an employee welfare benefit plan funded entirely by a long-term group insurance policy sold by Lincoln, the company which also underwrote this group policy.

15.     This group policy was purchased by Buffalo Rock to confer certain benefits upon Plaintiff and other employees.

16.     As a result, this policy qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under the Plans as that term is used in 29 U.S.C. § 1132.

17.     Under the terms of this LTD Plan providing for certain benefits accruing upon the Plaintiff becoming disabled, Plaintiff is "disabled" as this Plan defines that term.

18.     There are no Plan documents made available indicating that Lincoln has an enforceable grant of discretionary authority as Plan or Claims Administrator or that any express delegation has occurred for this Plan.

## LINCOLN'S LIABILITY

19.     Before becoming disabled, Plaintiff worked for many years at Buffalo Rock's bottling and packaging facility in Birmingham, Alabama on its production

4

floor where he had the primary responsibility of operating and maintaining the filling machine which dispensed product into bottles and cans.

20.   Plaintiff's work with this machine and the other machine on the plan floor – the packing machine – involved many repetitive physical, demanding tasks. For example, working with the filling machine included being responsible for refilling the machine with a box of bottle caps weighing about 40 pounds each, every 15 minutes.   It also included the regular insertion of a 10 pound sleeve of aluminum can lids every 15 seconds.

21.   Working with the packer machine which assembled the canned or bottled products into bulk packaging likewise involved regularly feeding the machine, but with boxing materials weighing 25 pounds each every 30 to 45 seconds. Because this machine was prone to frequent jams, workers like Plaintiff also had to be ready and able to stack the packaged product manually on pallets; product coming of the packing line weighed up to 25 pounds each, with a full pallet being seven layers high.

22.   This job required Plaintiff to be on his feet constantly and to be nimble with the constant handling of up to 25 pounds of weight no matter which machine he was assigned for that day.

23.   In addition to working with the machines, Plaintiff also had to be able to work *on* them, because part of his responsibilities was to service and maintain

them.  The filler machine had to be oiled three times per shift, an act that involved handling an oil container that typically weighed between 10 and 15 pounds.  He also had to be able to maneuver in and around the machine itself to clear jams.

24.    The packer machine had similar needs, except that it would need to be refilled with glue, an act that required maneuvering a wheeled cart weighing over 100 pounds.

25.    Despite working for many years at Buffalo Rock, Plaintiff did not advance within the company beyond operating the filling machine because this kind of work was the limit of his education, qualifications and experience.  Plaintiff has always performed heavy manual labor because he has a 10th grade education and has no certifications or special training.  His work ethic and willingness to do heavy labor sustained him until his body failed him and ended his ability to continue working in these kinds of jobs.

26.    Plaintiff stopped working in 2018 when his knees, both of which saw surgery for knee replacement, became so painful that he could not continue working even after undergoing rehabilitation.

27.    Lincoln approved Plaintiff's claim for disability benefits on or about December 14, 2018 upon finding that Plaintiff at that time was unable to continue working in his own occupation as a filler machine operator.

28.    Thirteen months later, in a letter dated January 2, 2020, Claims

6

Specialist Shantresia Bailey, on behalf of Lincoln, informed that her claims team had decided to terminate and close Plaintiff's LTD claim at that time because it found that his medical documentation no longer supported any restrictions and limitations in his ability to function that would prevent him from performing the main duties of his occupation.

29.     Lincoln, however, predicated that finding based on the same substantive medical evidence upon which it had previously based its finding that Plaintiff was disabled and entitled to benefits originally.

30.     On April 6, 2020, Plaintiff, having then retained counsel, appealed the termination of his benefit and contended that Lincoln's termination was an arbitrary and capricious reversal of a benefit based on the same medical evidence Lincoln had reviewed only months earlier.

31.     Plaintiff also noted that Lincoln's termination was patently defective because it was the product of patent unfairness demonstrated by Lincoln in its claims process.

32.     This unfairness manifested first where Lincoln's termination conflicted with its initial approval where there was no meaningful difference in Plaintiff's medical evidence for the two conflicting decisions.

33.     The second instance of unfairness occurred where Lincoln's termination relied on a questionable medical records review where the reviewing

7

physician retained by Lincoln found Dr. Lawrence Lemak, a world-renown orthopedist whose career eclipses almost all his peers throughout the county who regularly practice in that area, to lack professional medical credibility to opine as he had done that Plaintiff could not continue working in his heavy physical demand occupation. It is notable that this Lincoln-retained physician did so without ever examining the Plaintiff as Dr. Lemak had done on several occasions.

34.    The third instance of unfairness was that Lincoln's termination cited a lack of objective verification of Dr. Lemak's professional medical opinions and conclusions without ever seeking that verification itself though its own examination that it easily could have commissioned (as the policy also allowed it to do).

35.    To address this third issue in particular, Plaintiff submitted to a functional capacity examination at his own expense.  The results of that FCE confirm Plaintiff to be at most at a "light" physical demand level based on the physical functions he could and could not safely perform.

36.    Specific objective findings for Plaintiff included an inability to stand or walk more than "occasionally" and an inability to lift, handle, or move weights of more than 20 pounds "occasionally." These findings, which Dr. Lemak then confirmed as being consistent with his own evaluations, observations and treatment were entirely inconsistent with the requirements for Plaintiff's heavy-demand occupation as a machine operator.

37.    In a letter dated June 29, 2020, Claims Specialist Jeffrey Booth, on behalf of Lincoln, issued a two-part decision on Plaintiff's April 6, 2020 appeal.

38.    In the first part of this decision, Mr. Booth's claims team reversed the earlier Lincoln decision terminating and closing Plaintiff's claim while Plaintiff was subject to the policy's "Regular Occupation" disability definition that applied to the first two years of disability and found him to be entitled to full benefits through September 18, 2020 (which marked the end of two years being "on claim" with Lincoln).

39.    In the second part of this decision, however, Mr. Booth's claims team concluded that benefits were due to end at that two-year mark because in their view Plaintiff would not be able to satisfy the new disability definition that would take effect 90 days into the future.

40.    Applying this new definition to Plaintiff's claim now requiring that he be "unable to perform each of the main duties of any gainful occupation", it was found that Plaintiff's functional limitations did not preclude him from working as a "Dowell Inspector" or "Table Worker" and earning at least 60% of his pre-disability earnings of $2,894.32, that being the earnings floor under the policy's disability definition.

41.    Lincoln's decision this time was faulty for its reliance on a flawed vocational assessment for Plaintiff which stated without supporting evidence that

Plaintiff was capable of earning $2,894.32 or more at one of these jobs it had identified for him based on his now-established physical restrictions.

42.    Plaintiff again was faced with having to submit an appeal. That appeal was submitted via facsimile and U.S certified mail on September 10, 2020.

43.    The facsimile confirmation showed Lincoln as having successfully received the fax of the appeal on that same date, while the certified return receipt confirmed acceptance of the mailed version of the appeal on September 14, 2020.

44.    In response to this latest roadblock from Lincoln, Plaintiff submitted a vocational assessment that was far more detailed and reasoned than that upon which Lincoln had relied. In that analysis, citing national sources, the evaluator found that there are only 240 "Dowel Inspector" jobs and 1,005 "Table Worker" jobs in the national economy. In other words, the number of jobs for these classifications is so small in modern times that neither Mr. Mangione nor anyone else "could reasonably find employment" in one of these positions. Lincoln may as well have identified similarly obsolete jobs such as elevator operator, clock keeper, or film projectionist instead.

45.    Lincoln confirmed receipt of this information in a letter dated September 17, 2020 and, consistent with Plan terms and Department of Labor regulations, promised a decision within 45 days of the date of its initial receipt of the appeal (via fax) on September 10, 2020 -- or October 25, 2020.

10

46.     Thereafter, in a letter dated October 9, 2020, Lincoln sent a nurse-prepared summary of the medical records that were already on file with Lincoln as of the date of its most recent termination, together with copies of "the prior peer review and Transferrable Skills Analysis" that Plaintiff's appeal had already directly addressed.  The letter invited Plaintiff to respond to the "new" information within 21 days.

47.     Although the letter recognized that the 21 days for the invited response would pass the October 25th decision deadline, it did not request nor identify any extension of that decision timeframe having been taken. Instead, it indicated that if no response was received by October 30, "then we will render a decision based on the information currently in the file...."  It also stated, however, that a decision would be made sooner if Plaintiff either responded sometime *before* October 30 or indicated that no response would be made.

48.     Perplexed by this letter from Lincoln that included *no new reviews or evidence* to which Plaintiff had not already responded by way of the September 10, 2020 appeal submission, Plaintiff Counsel sent Lincoln a letter dated October 15, 2020 questioning what new evidence was being sent and indicated that if the only new item was the review of pre-existing medical records by "Lynn S, RN," then Plaintiff had no further response to make because the appeal already addressed what Lincoln had sent.

11

49.    Plaintiff reiterated this position seven days in later in correspondence dated October 22, 2020 after receiving a phone message from Lincoln confirming its nurse's summary of records to be the only new item sent, indicating again that if this was the only new piece of information, the letter of October 15, 2020 sufficed as a response.

50.    Lincoln's October 25th deadline for issuing a decision came and went without any decision being issued and without any identification of an extension having been made.

51.    In a letter sent on November 10, 2020 via fax (but bearing the incorrect date of October 22, 2020), Plaintiff counsel, after hearing nothing from Lincoln, wrote to Lincoln again noting the absence of a decision or extension and indicated the claim to be deemed denied by operation of law under Department of Labor regulations and Plan terms.

52.    Plaintiff counsel in that letter also invited Lincoln to offer its response as to why it might contend that its deadline had not passed as Plaintiff claimed; Lincoln never responded to that invitation.

53.    At the same time, Plaintiff requested the production of Plaintiff's claim file pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii) so that he could evaluate his remedies under 29 U.S.C. § 1132(a).

54.    With no valid or proper extension having been taken and with Lincoln's

deadline for issuing a written decision having expired, Lincoln eventually issued an out-of-time written decision on November 25, 2020.

55.   As of the time it made that decision, it had failed to provide upon request the following documentation:

(a)   the claims manual and procedures which govern the administration of Plan benefits and which was specifically made part of Plaintiff's claim record;

(b)   documents exchanged with or generated in the course of claims administration by entities hired in connection with the administration of Plaintiff's benefits claim;

(c)   and, to the extent such exist, documents sent to, received by, or created by Lincoln's legal department in connection with the administration of Plaintiff's claim.

56.   On December 4, 2020, Plaintiff nevertheless submitted a second appeal as required under the Plan despite Lincoln's tardy decision on the first appeal arguably excusing any requirement for further adherence to the Plan's administrative process.

57.   In that second appeal, Plaintiff noted that Lincoln's November 25, 2020 letter did not address a single issue Plaintiff had raised in his first appeal over Lincoln's continued adherence to its position that Plaintiff was no longer qualified

13

for benefits under the policy's "Any Occupation" disability definition because his functional limitations, which appear largely undisputed, did not preclude him from working as a "Dowell Inspector" or "Table Worker" and earning at least 60% of his pre-disability earnings of $2,894.32, that being the earnings floor under the policy's "Any Occupation" disability definition.

58.    Lincoln adhered to this position despite uncontroverted evidence showing these occupations did not exist in meaningful numbers within the national economy, therefore were not reasonable as employment alternatives.

59.    Ms. Keri Younker on behalf of Lincoln doubled down on Lincoln's finding stating basically that the number of jobs that exist does not matter.  The implication of her position is that if there is a single occupation out there that exists somewhere out there, it can be cited as a reasonable alternative to deny benefits to a claimant.

60.    Plaintiff in this second appeal informed Lincoln that its appeal review was only a regurgitation of the grounds asserted for the original claim termination and that not one of the problems with Lincoln's interpretation and application of the disability definition in the policy or its vocational analysis had been addressed.

61.    Lincoln responded to this second appeal in the same way as it responded to the first, which was once again to conduct a review of Plaintiff's medical records for restrictions and limitations – even though those were not in

14

dispute in the earlier appeal – and once again find that the obsolete occupations of "dowel inspector" and "table worker" permit it to avoid having to pay additional benefits to Plaintiff under the policy.

62.   In response to this decision, Plaintiff, through counsel, requested an updated production of his claim file and other materials required to be furnished under ERISA upon request.

63.   Once again, Lincoln withheld the same categories of items from that production as those identified above after the two earlier decisions were reached.

64.   Although the claim record at this time appears incomplete for these reasons, he documents identified thus far by Plaintiff as being part of his claim file, however, establish numerous breaches and errors committed by Lincoln during the course of administering Plaintiff's claim, including:

(a)   The targeting of Plaintiff's claims for denial because ERISA governs;

(b)   The failure by Lincoln to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

(c)   The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of

15

the ability to obtain a full and fair review of his claim through an overall failure to communicate with Plaintiff about the claim;

(d) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all of his claim;

(e) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(f) Failing to accord any weight to Plaintiff's medical providers and other examiners who personally examined the Plaintiff, some on a regular basis;

(g) Failing to adhere to the terms of the Plan, including as to the timely issuance of a written decision;

(h) Failing to give meaningful consideration to Plaintiff's Social Security disability determination;

(i) Purposefully limiting and curtailing the review of its medical personnel and otherwise improperly exerting influence on them to opine against payment of benefits; and

(j) Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff and instead relying on the

16

demonstrably deficient report of a biased and unqualified doctor

to perform an incomplete review of only records.

65.    Despite Plaintiff's established disability and entitlement to coverage under the terms of the Plan, Lincoln determined that Plaintiff was not "disabled" and that he did not qualify for LTD benefits.

66.    As set forth above in connection with Lincoln's fiduciary breaches, Lincoln's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations.  Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their decision.

67.    This conflict of interest further calls into question the credibility of Lincoln's claims personnel and reviewers.

68.    Lincoln did not provide Plaintiff with a meaningful opportunity for a full and fair review of this claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1, and instead actively tried to subvert Plaintiff's ability to protect his right to such a review.

69.    Lincoln's decision process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations.  In fact, no written decision was

issued at all within the time required. Instead, Lincoln has provided post hoc rationalizations for its denial of Plaintiff's appeal.

70.     Plaintiff has exhausted all Plan remedies even though Lincoln's failure to adhere to Plan terms or ERISA requirements and regulations did not require it. As such, this case is ripe for judicial review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Onofrio Anthony Mangione respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

   a.     For an order against Lincoln awarding Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

   b.     For a judgment against Lincoln awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

   c.     For an order requiring Lincoln to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

   d.     Such other relief as may be deemed just and proper.

Respectfully submitted,

M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**Plaintiff's Address:**

Onofrio Anthony Mangione
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendant's Address:**

The Lincoln National Life Insurance Company
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

## REQUEST FOR SERVICE BY
## CERTIFIED MAIL

Please serve the defendants **Lincoln National Life Insurance Company** by certified mail pursuant to Federal Rules of Civil Procedure 4(e)(1).


M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com